IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VETERAN FIBER RESOURCES, LLC, | ) Case No. 1:25-cv-00500 |
| Plaintiff, | ) |
| v. | ) |
| TRUELINE INFRASTRUCTURE SOLUTIONS, LLC, f/k/a ATLANTIC ENGINEERING GROUP, LLC, d/b/a ATLANTIC ENGINEERING GROUP, LLC / AEG, YOUNG'S COMMUNICATIONS, LLC, YOUNG'S COMMUNICATIONS HOLDINGS, LLC, and CHAD RASMUSSEN, | ) |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES**

The Plaintiff, Veteran Fiber Resources, LLC ("Plaintiff" or "VFR"), by counsel and for its Complaint for Damages against Trueline Infrastructure Solutions, LLC, f/k/a Atlantic Engineering Group, LLC, d/b/a Atlantic Engineering Group, LLC / AEG (together "AEG"), Young's Communications, LLC ("Young's Communications"), Young's Communications Holdings, LLC ("Young's Holding"), and Chad Rasmussen ("Rasmussen") (collectively, AEG, Young's Communications, Young's Holding, and Rasmussen the "Defendants"), allege and state as follows:

I.   **Nature of the Case**

The City of Bloomington is part of the Hoosier Fiber Networks Project, which is a public/private infrastructure project to install a fiber network to support highspeed data transmissions. AEG, a contractor on that project, subcontracted with VFR in April 2024 to perform the work and enter into additional installation contracts. Just six (6) months later, by October 2024, AEG was in default

on payments to VFR, and by February 28, 2025, AEG discontinued operations and terminated substantially all personnel. AEG has failed / refused to pay VFR for $637,346.54 of work performed.

What's more is that AEG continued to demand performance by VFR when it was known, or should have been known, that AEG was insolvent and would not pay VFR. AEG has taken payments it received and funneled the money upstream from the undercapitalized straw-entities rather than pay its debts.

## II.   Parties

1. Plaintiff, VFR, is an Indiana limited liability company, formed as part of a series under OP4 LLC-S, a Domestic Master LLC with a principal business location at 7230 Arbuckle Commons, Suite 117, Brownsburg, Indiana 46112. VFR has one member, Hydre Abdulla, who is a citizen of Indiana.

2. Defendant, AEG, is a Delaware limited liability company with a principal business location at 424 West Drive, Melbourne, Florida 32904. Upon information and belief, based on publicly available information, the members of AEG are citizens of North Carolina, Georgia, and / or Florida, and no members are citizens of Indiana.

3. Defendant, Young's Communications, is a Delaware limited liability company with a principal business location at 424 West Drive, Melbourne, Florida 32904. Upon information and belief, based on publicly available information, the members of Young's Communications are citizens of North Carolina, Georgia, and / or Florida, and no members are citizens of Indiana.

4. Defendant, Young's Holdings, is a Delaware limited liability company with a principal business location at 424 West Drive, Melbourne, Florida 32904. Upon information and belief, based on publicly available information, the members of Young's Holdings are citizens of North Carolina, Georgia, and / or Florida, and no members are citizens of Indiana.

5. Defendant, Chad Rasmussen, is a citizen of North Carolina residing in Charlotte.

### III.    Jurisdiction and Venue

6.     Section 10.6 of the Master Development Agreement ("MDA") contains a venue provision stating in relevant part:

> The sole and exclusive venue for all claims, disputes or controversies arising out of, or in connection with the breach, interpretation, application, or enforcement of this Agreement, or arising out of, or in connection with, the System, shall be the United States District Court for the Southern District of Indiana, or if there is no federal court jurisdiction, then Monroe County Circuit Court in Monroe County, Indiana.

7.     All terms and conditions, including the foregoing venue provision, were incorporated in the Subcontract Agreement executed by VFR and AEG / Young's Communications. This case relates to unpaid worked performed on "the System," and thus falls within the scope of Section 10.6 of the MDA, as incorporated in the Subcontract Agreement.

8.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, in that VFR and Defendants are citizens of different states (based on publicly available information) and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this District because a substantial part of the events giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2).

### IV.    Facts Applicable to all Counts

<u>The Master Development Agreement</u>

10.    The City of Bloomington, Indiana ("<u>Bloomington</u>"), participated in the launch of the Hoosier Fiber Networks Project (the "<u>Project</u>") on or about February 8, 2022.

11.    The Project primarily involves installing infrastructure to bring a fiber-to-the-premise ("<u>FTTP</u>") network to Indiana in four (4) municipalities; specifically, Bloomington, Columbus, Shelbyville, and Bartholomew County.

12. Meridiam Infrastructure North America ("Meridiam") and Hoosier Networks, LLC ("Hoosier Networks") collaborated with, and continue to collaborate with, Bloomington in connection with the FTTP infrastructure construction, maintenance, and operation.

13. On or about June 22, 2022, Bloomington entered the MDA with Hoosier Networks and Meridiam. A true and correct copy of the MDA is attached and incorporated into this Complaint for Damages as **Exhibit A**.

14. The MDA was a direct result of the efforts of Bloomington "to find an experienced and financially stable commercial partner for a public/private partnership to construct, maintain and operate an FTTH network" within the Bloomington city limits.

15. The MDA identifies Hoosier Networks as the "Developer", and the MDA as engaging the "Developer and Affiliates."

16. The MDA defines "Affiliates" to include "any entity owned or controlled by [Hoosier Networks], owning or controlling [Hoosier Networks] or under common ownership or control with [Hoosier Networks]."

17. The MDA includes and incorporates AEG as the "Construction Partner" of Hoosier Networks.

18. For purposes of the MDA, AEG is an Affiliate of Hoosier Networks.

19. Hoosier Networks and Meridiam granted AEG contracts for the Project work in Bloomington, Columbus, and Bartholomew County.

## The Subcontract Agreement

20. On or about April 17, 2024, AEG and Young's Communications entered a "Subcontract Agreement" with VFR ("Subcontract Agreement"). A true and correct copy of the Subcontract Agreement is attached and incorporated into this Complaint for Damages as **Exhibit B**.

4948936v3

21. The Subcontract Agreement incorporates, relies upon, and references the "Prime Contract" which is the MDA, and the "Client" which is Bloomington.

22. The Subcontract Agreement provides Bloomington "may provide additional specifications" for the materials and services contemplated by the Subcontract Agreement.

23. The Subcontract Agreement was amended on or about May 28, 2024, to provide VFR will be paid within fifteen (15) days of receipt of a correct and approved invoice with a 2% discount from payment. A true and correct copy of the Amendment Number 1 to Subcontract Agreement is attached and incorporated into this Complaint for Damages as **Exhibit C**.

24. VFR has timely provided correct and approved invoices but has not received payment within fifteen (15) days as agreed.

25. AEG and Young's Communications were in payment breach of the Subcontract Agreement as early as October 2024.

State of Formation (GA/DE)

26. Defendant, AEG, was originally incorporated in the State of Georgia on or about February 12, 1996, as "Atlantic Engineering Group, Inc."

27. On or about March 31, 2022, "Atlantic Engineering Group, Inc.," a Georgia corporation, was converted to "Atlantic Engineering Group, LLC," and was organized in Delaware.

28. On or about September 16, 2024, "Atlantic Engineering Group, LLC" amended its Certificate of Formation in Delaware to change its name to "Trueline Infrastructure Solutions, LLC."

29. On or about September 24, 2024, "Atlantic Engineering Group, LLC" amended its Certificate of Authority in Georgia to change its name to "Trueline Infrastructure Solutions, LLC."

30. Defendant, Young's Communications, was originally formed as "Y-Com Tempco, LLC" in Delaware on or about September 27, 2019.

4948936v3

31. On or about October 1, 2019, "Young's Communications Co., Inc.," a Florida corporation, merged with and into "Y-Com Tempco, LLC" with "Y-Com Tempco, LLC" being the surviving limited liability company.

32. "Young's Communications Co., Inc.", a Florida corporation, had been incorporated on June 5, 1972, and became inactive on or about July 2, 2018, due to the merger.

33. On or about October 1, 2019, "Y-Com Tempco, LLC" changed its name with the State of Delaware, Secretary of State, to "Young's Communications, LLC."

34. Defendant, Young's Holdings, was organized in Delaware on or about June 29, 2021.

35. Young's Holdings was revived in Delaware on or about January 17, 2025.

<u>Foreign Filings (IN)</u>

36. Defendant, AEG, filed as a foreign limited liability with the Office of the Secretary of State, State of Indiana, and received a Certificate of Authority on or about January 28, 2004.

37. The AEG filing identifies Rasmussen as the Member and as the "Governing Person".

38. Defendant, Young's Communications, filed as a foreign limited liability with the Office of the Secretary of State, State of Indiana, and received a Foreign Registration Statement on or about May 10, 2023.

39. The Young's Communications filing identifies Rasmussen as the President and as the "Governing Person."

40. Defendant, Young's Holding, has not filed as a foreign limited liability with the Office of the Secretary of State, State of Indiana.

<u>Commingled Businesses (FL)</u>

41. In Florida, a "<u>Title Member</u>" listed on the public records of the Secretary of State refers to, and identifies, an owner of the limited liability company who is also an "<u>Authorized Representative</u>" as defined by Section 605.0102(8) of the Florida Revised Limited Liability Company Act.

6

42. Title Member denotes both ownership and control of the subject limited liability company.

43. AEG filed as a foreign limited liability company with the Secretary of State for the State of Florida on or about October 24, 2022.

44. AEG identified and continues to identify Young's Communications as the Title Member with the Secretary of State for the State of Florida.

45. Both AEG and Young's Communications list 424 West Drive, Melbourne, Florida 32904, as their Principal Address with the Secretary of State for the State of Florida.

46. The Amended Annual Report filed by AEG with the Secretary of State for the State of Florida on or about February 6, 2024, was filed by Young's Communications as the Title Member. Young's Communications also filed the Annual Report for AEG on January 15, 2024.

47. Young's Communications filed as a foreign limited liability company with the Secretary of State for the State of Florida on or about September 30, 2019.

48. Young's Communications identified and continues to identify Young's Holding as its Title Member with the Secretary of State for the State of Florida.

49. The Amended Annual Report filed by Young's Communications with the Secretary of State for the State of Florida on or about August 6, 2024, was filed by Young's Holding as the Title Member. Young's Holding also filed the Amended Annual Report for Young's Communications on June 14, 2024.

50. Young's Holding filed as a foreign limited liability company with the Secretary of State for the State of Florida on or about December 14, 2023.

51. Young's Holding identified and continues to identify Rasmussen as the Title Member with the Secretary of State for the State of Florida.

4948936v3

52. Rasmussen lists 424 West Drive, Melbourne, Florida 32904, as his address with the Secretary of State for the State of Florida.

53. All of AEG, Young's Communications, Young's Holding, and Rasmussen list 424 West Drive, Melbourne, Florida 32904, as their Principal Address with the Secretary of State for the State of Florida.

54. The Defendants have collectively engaged in business through a corporate group, with overlapping management, common ownership and control, shared offices, and sham entities which do not have meaningful economic independence, and on information and belief, have commingled funds between the entities.

55. Defendants entered into the Subcontract Agreement with VFR and managed the income from the Project in such a fashion as to render the entity contracting parties, such as AEG and Young's Communications, unable to pay invoices as they became due.

56. Defendants knew or should have known that AEG and Young's Communications were inadequately capitalized from the date of the Subcontract Agreement; and, Defendants admit in writing that they possessed such knowledge not later than December 2024. A true and correct copy of a WARN Act Notice ("WARN Notice") dated February 28, 2025, is attached and incorporated into this Complaint for Damages as **Exhibit D**.

57. The WARN Notice expressly states that the Defendants knew about the insolvency of AEG and Young's Communications for several months, and that the shortfall was in excess of One Hundred Million Dollars ($100,000,000.00).

58. The WARN Notice expressly states that two (2) surety providers were demanding additional collateral in an amount exceeding Eighty-Four Million Dollars ($84,000,000.00).

59. The WARN Notice expressly states that discussions included Defendants' "equity sponsor, funded debt holders, and minority equity holders" which further calls into question the timing

4948936v3

of the Subcontract Agreement, the early payment default of the Subcontract Agreement, and the communications of the agents, officers, and employees of Defendants during this time.

60. Defendants knew or should have known from the beginning that AEG and Young's Communications would be unable to satisfy the financial obligations of the Subcontract Agreement, resulting in an inability to pay VFR for contracted work.

61. The Defendant entities were all controlled by Rasmussen.

### AEG Wind-Down

62. On Friday, February 28, 2025, AEG and Young's Communications terminated all or substantially all its personnel and announced its decision to initiate a wind-down of its business (the "Announcement").

63. In connection with the Announcement, AEG and Young's Communications issued the WARN Notice and notified all employees in the Bloomington and/or Columbus, Indiana, locations that:

> "For the past several months, the Company has been working diligently to secure capital to continue as a going concern. Unfortunately, after discussing the Company's long-term funding needs with a number of prospective financing sources, the Company does not anticipate that it will be able to secure the necessary capital and will need to commence an orderly liquidation process in the near term. **Beginning in late December 2024**, and continuing throughout January 2025, the Company discovered that certain of its key **contracts were significantly underfunded ($100MM+),** resulting in a significant capital need. The Company initiated discussions with its key stakeholders in January 2025 regarding long-term funding for the business commensurate with the Company's 2025 business plan. While these conversations were ongoing, the Company received several unforeseen customer contract cancellations as well as **collateral demands from two of its surety providers in excess of $84MM+ in the aggregate**. In light of the foregoing, the Company intends to cease all operations, which includes permanently closing all facilities and all employees of the Company will suffer an employment loss for purposes of the WARN Act." [Emphasis Added].

64. The WARN Notice demonstrates actual or constructive knowledge by the Defendants of the depth of the insolvency they created, which knowledge existed not later than December 2024; and, which knowledge, in the context of the early breach of the Subcontract Agreement, evidences a pre-conceived plan to set thinly capitalized entities between creditors and the profits.

65. Immediately prior to the Announcement and WARN Notice, the Chief Executive Officer of the various commingled entities, Rob Hughart, resigned.

66. The Announcement and WARN Notice informed the employees of AEG and Young's Communications that "employment with the Company will be terminated on February 28, 2025, or within fourteen (14) days thereafter."

67. The Announcement and WARN Notice were timed and designed to impede the creditors of AEG and Young's Communications, severing all access to personnel responsible for invoice payments and pulling all information and monies to the 424 West Drive, Melbourne, Florida 32904, location controlled by Defendants.

68. Defendants consciously planned the Announcement to maximize benefits and profits above the AEG and Young's Communications entity level, including intentional acts deepening the insolvency of AEG and Young's Communications and damaging creditors such as VFR, including, without limitation:

    A. Aggressively demanding contractor performance, including from VFR, which generates revenues for the upper entities when there was no expectation or intention of making payment to the contractors, including VFR.

    B. On December 9, 2024, the Defendants were pushing on-site managers to accelerate performance by contractors, such as VFR, with one on-site manager indicating to VFR that Defendants were "tearing us up on completion dates."

    C. On December 10, 2024, while demanding production from VFR, assuring VFR that Defendants "will get [the invoices] entered and updated and [AEG representative] will get with AP to get payment."

4948936v3

D. On December 18, 2024, while continuing to press for additional production from VFR, undertaking "to make sure [Defendants] have and see if anything is missing so [Defendants] can get [VFR] true'd up."

E. On January 8, 2025, Conor Hart, Director of Operations, in the same communication with a request for weekly emails from VFR detailing production, informed VFR that "All recent production entered needs to be field verified and approved in OX per Trueline's processes before I can approve Trueline AP to release payment. I have directed the Jerrod Gabriel, PM over Bloomington project to expedite the field review process."

F. The January 8, 2025, Conor Hart email further assured VFR that "[Conor Hart] will approve AP to release payment based on the Trueline's team progress field verifying, so this won't be waiting until the end for full review and completion to begin releasing payment." Payment was never received.

G. On January 24, 2025, despite full performance by VFR and accommodating production demands of Defendants, receiving the reply "No. Not one contractor did." in response to asking whether VFR was to receive its payment.

H. During the same week (January 20, 2025), the CFO for the Defendants, believed to be Karla Lunan, unexpectedly terminated her employment due to "money issues and [Defendants'] upper management."

I. On February 4, 2025, months after the "late December 2024" date provided in the WARN Notice by which Defendants were aware of a $100,000,000 shortfall, and while Defendants were continuing to demand services from VFR, the Defendants informed VFR that they "approved everything" and payment to VFR was forthcoming, only to

11

    backtrack stating that the Defendants "don't have the money till [Defendants] get paid by [Hoosier Fiber] next week."

  J. On February 20, 2025, barely a week before the Announcement and well after the "late December 2024" date provided in the WARN Notice, as Defendants sought to extract the last bit of value from VFR, Defendants stated to VFR "[all deviations] have been overridden and invoices approved."

  K. The February 20, 2025, approval of invoices led to a phone call wherein a Defendant representative informed VFR that Conner Hart, the Director of Operations of Defendants, had blocked the payment.

69. On or about January 5, 2025, VFR provided a statement of account via email to AEG and Young's Communications ("<u>Account Statement</u>") which detailed the past due invoices in the amount of $413,705.80, which had been outstanding for 60 to 90 days, plus the obligation of AEG and Young's Communications in relation to the 10% retainage. The Account Statement notes the confirmation of AEG and Young's Communications that the invoices had been approved. A true and correct copy of the Account Statement is attached and incorporated into this Complaint for Damages as **<u>Exhibit E</u>**.

70. On information and belief, Rasmussen benefitted from the wrongful and actionable activities of the Defendants, which benefits include compensation and other perquisites.

**Count I - Breach of Contract**
**(Breach of Subcontract Agreement against AEG and Young's Communications)**

71. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

72. VFR entered into a valid and enforceable written contract with AEG and Young's Communications; specifically, the Subcontract Agreement.

73. VFR timely performed all its obligations under the Subcontract Agreement.

74. The Subcontract Agreement provides:

   A. At Section 18.3, VFR shall submit to AEG and Young's Communications "an invoice for payment for approved production, no more frequently than weekly;" and, AEG and Young's Communications shall pay VFR "for the performance of the Work in accordance with the applicable Work Order and any associated Change Order within thirty (30) days of receipt of a correct and approved invoice."

   B. At Section 18.3.3, AEG and Young's Communications "shall release the retained monies to [VFR], to be paid within thirty (30) days of receipt of a correct and approved invoice."

75. VFR, in full conformity with the Subcontract Agreement, tendered an invoice or invoices for payment.

76. AEG and Young's Communications have failed and refused to pay the invoices as required by the Subcontract Agreement, thereby breaching their obligations under the Subcontract Agreement.

77. VFR has been damaged by the failure and refusal of AEG and Young's Communications to pay the invoices as required by the Subcontract Agreement.

78. The damages suffered by VFR and caused by AEG and Young's Communications were foreseeable and anticipated at the time the parties entered into the Subcontract Agreement.

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, in an amount to be proven at trial, and all other just and appropriate relief under the premises.

## Count II – Account Stated
### (Account Stated against AEG and Young's Communications)

79. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

4948936v3

80. The Account Statement was and is a calculation by VFR of the balance due from AEG and Young's Communications.

81. Despite the repeated efforts and demands of VFR to collect payment of the amount of the Account Statement from AEG and Young's Communications, VFR has been unsuccessful.

82. Despite the agreement and representations of employees and agents of AEG and Young's Communications that the Account Statement was correct and that payment had been approved, processed, and was forthcoming, the Account Statement has not been paid.

83. Despite VFR providing invoices and reports related to the Project and substantiating the amounts due and owing from AEG and Young's Communications as reflected by the Account Statement, all of which were timely and in the format and substance required by the Subcontract Agreement, AEG and Young's Communications have failed and refuse to make payment.

84. Neither AEG nor Young's Communications have objected to the Account Statement, nor have they paid the Account Statement, in whole or in part, and no third-party or affiliate has made payment on behalf of AEG or Young's Communications.

85. Defendants, AEG and Young's Communications, are now indebted to VFR in the amount of six hundred thirty-seven thousand three hundred forty-six and .54 Dollars ($637,346.54 USD) (Account Statement plus 10% retainage).

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, in the amount of six hundred thirty-seven thousand three hundred forty-six and .54 Dollars ($637,346.54 USD), plus the amount of any invoice that become due subsequent to the filing of this Complaint for Damages, interest, reasonable attorneys' fees, for costs of this action, and for such other just and appropriate relief under the premises as may be allowed.

4948936v3

## Count III – Constructive Fraud
**(Constructive Fraud against AEG and Young's Communications)**

86. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

87. AEG and Young's Communications knowingly and intentionally made false and misleading statements in connection with the Project and the Subcontract Agreement including, without limitation, by (A) promising to pay VFR when they knew or should have known payment for the goods and services would not be made, (B) undercapitalizing, or otherwise removing cash and/or assets from, AEG and Young's Communications, and (C) continuing to demand performance by VFR under the Subcontract Agreement subsequent to entry of AEG and Young's Communications into the zone of insolvency.

88. The statements noted above, the content of the Subcontractor Agreement, and the concealment of the insolvency of AEG and Young's Communications were intended to, and did, create a false impression and mislead VFR.

89. VFR acted reasonably when it relied upon the false and misleading statements of AEG and Young's Communications.

90. VFR has suffered a pecuniary loss and other damages that have been directly caused by its reliance upon the false and misleading statements of AEG and Young's Communications.

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, in an amount to be proven at trial, and all other just and appropriate relief under the premises.

## Count IV – Statutory Fraud
**(Statutory Fraud against AEG and Young's Communications)**

91. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

4948936v3

92. AEG and Young's Communications knowingly and intentionally made false and misleading statements in connection with the Project and the Subcontract Agreement including, without limitation, by (A) promising to pay VFR when they knew or should have known payment for the goods and services would not be made, (B) undercapitalizing, or otherwise removing cash and/or assets from, AEG and Young's Communications, and (C) continuing to demand performance by VFR under the Subcontract Agreement subsequent to entry of AEG and Young's Communications into the zone of insolvency.

93. The statements noted above, the content of the Subcontractor Agreement, and the concealment of the insolvency of AEG and Young's Communications were intended to, and did, create a false impression and mislead VFR.

94. AEG and Young's Communications used various computer programs to obtain the property of VFR, including, without limitation, email programs, invoice communications and review, and Project related documentation.

95. AEG and Young's Communications used various Project documents relating to the MSA with Bloomington, to mislead VFR into relying upon the financial stability of Bloomington in evaluating risk of non-payment.

96. VFR has suffered a pecuniary loss of more than One Hundred Thousand Dollars ($100,000.00).

97. AEG and Young's Communications violated Ind. Code § 35-43-5-4 and did so knowingly and intentionally.

98. VFR reasonably relied upon the false and misleading statements in connection with the Project and the Subcontract Agreement, and have been damaged.

4948936v3

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, in an amount to be proven at trial, and all other just and appropriate relief under the premises.

### Count V – Conversion
### (Conversion against AEG and Young's Communications)

99. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

100. AEG and Young's Communications knowingly and intentionally deprived VFR of its property, including, without limitation, monies and inventory, by (A) inducing VFR to enter the Subcontract Agreement when they knew or should have known payment for the goods and services would not be made, (B) knowingly and intentionally undercapitalizing, or otherwise removing cash and/or assets from, AEG and Young's Communications, and (C) continuing to demand performance by VFR under the Subcontract Agreement subsequent to entry of AEG and Young's Communications into the zone of insolvency.

101. VFR in no way authorized, nor did VFR ratify, the wrongful conduct of AEG and/or Young's Communications.

102. VFR has been damaged by the wrongful conduct of AEG and Young's Communications.

103. The value of cash and/or assets converted by AEG and/or Young's Communications exceeds One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, for an amount equal to the value of the property converted by Defendant AEG and Defendant Young's Communications, the cost of this action, reasonable attorneys' fees, and all other just and appropriate relief under the premises.

### Count VI – Indiana Crime Victim Relief Act
### (Crime Victim Relief against AEG and Young's Communications)

104. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

105. AEG and Young's Communications knowingly and intentionally deprived VFR of its property, including, without limitation, monies and inventory, by (A) inducing VFR to enter the Subcontract Agreement when they knew or should have known payment for the goods and services would not be made, (B) knowingly and intentionally undercapitalizing, or otherwise removing cash and/or assets from, AEG and Young's Communications, and (C) continuing to demand performance by VFR under the Subcontract Agreement subsequent to entry of AEG and Young's Communications into the zone of insolvency.

106. VFR in no way authorized, nor did VFR ratify, the wrongful conduct of AEG and/or Young's Communications.

107. VFR has been damaged by the wrongful conduct of AEG and Young's Communications.

108. Pursuant to the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1, *et. seq*. VFR is entitled to the following damages, in addition to those already identified above, based upon the conversion and fraudulent conduct of AEG and Young's Communications:

   A. An amount equal to three-times the actual amount of the value of the property converted by AEG and Young's Communications.

   B. The cost of the action.

   C. Reasonable attorney's fees.

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against Defendant AEG and Defendant Young's Communications, jointly and severally, for an amount equal to three-times the actual amount of the value of the property converted by Defendant AEG and Defendant Young's

Communications, the cost of this action, reasonable attorneys' fees, and all other just and appropriate relief under the premises.

## Count VII – Piercing Veil
### (Piercing Veil against all Defendants)

109. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

110. On information and belief, all Defendant entities share common ownership, control, personnel, financial resources, location of operations, and other attributes as more fully set forth in this Complaint for Damages.

111. On information and belief, all Defendant entities are owned, in whole or in part, by Rasmussen; and, Rasmussen is in control of all such Defendant entities, is involved in the managing of the business and financial matters of such Defendant entities, and is empowered with the authority and duty to authorize the making of creditor payments.

112. At all relevant times, Defendants were significantly undercapitalized, used the corporate form to promote fraud, injustice, or illegal activities, commingled business and financial affairs, and engaged in other acts or conduct ignoring, controlling, or manipulating the corporate form.

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against all Defendants, jointly and severally, for the claims and losses set forth in this Complaint for Damages, the cost of this action, reasonable attorneys' fees, and all other just and appropriate relief under the premises.

## Count VIII – Unjust Enrichment
### (Unjust Enrichment against all Defendants)

113. VFR incorporates by reference all the allegations contained in each of the above paragraphs.

114. VFR conferred benefits upon the Defendants by performing under the Subcontract Agreement, and such additional services as may have been requested.

4948936v3

115. The Defendants accepted the performance under the Subcontract Agreement and any requested additional services, without payment to VFR.

116. The Defendants' acceptance of VFR's performance without payment to VFR is inequitable.

117. The Defendants have been unjustly enriched at the expense of VFR in the amount of not less than six hundred thirty-seven thousand three hundred forty-six and .54 Dollars ($637,346.54 USD), plus pre-judgment interest, attorney's fees, and expenses.

WHEREFORE, Plaintiff, VFR, respectfully requests judgment against all Defendants, jointly and severally, for the claims and losses set forth in this Complaint for Damages, the cost of this action, reasonable attorneys' fees, and all other just and appropriate relief under the premises.

## Jury Demand

Plaintiff, VFR, respectfully demands a jury trial as to all claims asserted in this Complaint for Damages that involve issues triable of right by a jury.

Dated:  March 14, 2025                                    Respectfully submitted,

/s/ Paul D. Vink
Paul D. Vink (Atty. No. 23785-32)
Gregory F. Hahn (Atty No. 10547-49)
Joseph M. Baertschi (Atty No. 38117-49)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000; (317) 684-5422 DDN
(317) 684-5173 fax
pvink@boselaw.com
ghahn@boselaw.com
jbaertschi@boselaw.com

*Attorneys for Plaintiff, Veteran Fiber Resources, LLC*

4948936v3